UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 11-10071-RWZ

UNITED STATES OF AMERICA

v.

RAMAN HANDA

MEMORANDUM OF DECISION AND ORDER

July 19, 2017

ZOBEL, S.D.J.

Defendant Raman Handa was charged by a federal grand jury with twelve counts of wire fraud in 2011, but he was not arrested until February 2017. That delay, he asserts, violated his Sixth Amendment right to a speedy trial and he moves to dismiss the indictment. Docket # 22. The motion is granted.

I.   Factual Background

Defendant co-owned and operated Alpha Omega Jewelers, a jewelry business that had significant financial difficulties in 2007. Around late December 2007, defendant himself was "undergoing sever [sic] stress, anxiety, depression, and sleep deprivation," that resulted in his admission to the Lahey Clinic after his wife found him unresponsive in

their home.  Docket # 22, at 4.  He contends that he left the United States shortly thereafter in order to seek medical treatment in India.[1]  In 2008, defendant was embroiled in a bankruptcy proceeding involving Alpha Omega in this district, in which he was represented by Edward J. Quinlan of Quinlan & Sadowski, PC.  Quinlin by affidavit attests that he did not learn of the indictment or warrant issued for the arrest of defendant until February 21, 2017.  Also in 2008, defendant retained Edward McLaughlin, another Massachusetts attorney, to represent defendant's interests in connection with the government's search of Alpha Omega.  McLaughlin in his affidavit states that he "had several communications with prosecutors in an effort to return Mr. Handa's personal belongings," Docket # 42-2, at ¶ 5[2], which were seized during the search, but that he was never informed that defendant, individually, was the target of a criminal investigation or that defendant had been charged in an indictment.  The government has not produced any evidence to the contrary; indeed, it concedes that McLaughlin "was in frequent communication with prosecutors regarding the investigation including . . . requests for Alpha Omega business records and coordinating the return of personal items to the Handa family."  Docket # 38, at 3.

From December 2007 to March 2008, defendant openly resided in India.  He later traveled to the United Kingdom to live with his brother.  Around 2010 or 2011, defendant

---

[1] During the hearing, the government disputed defendant's account of these facts, but it failed to provide any supporting evidence that defendant fled the country or intentionally evaded prosecution. Defendant left the United States a year prior to the criminal investigation and nearly four years before the return of an indictment.  Further, it is undisputed that defendant traveled and lived openly while abroad.  In any event, the "primary burden" was on the government to bring the case to trial. United States v. Casas, 356 F.3d 104, 113 (1st Cir. 2004).  Thus, for purposes of the Sixth Amendment speedy trial analysis, the reason for defendant's pre-indictment departure is not relevant.

[2] Although the docketed affidavits attached to defendant's motion are unsigned, defendant's attorney submitted executed copies of these supporting affidavits to the court at the hearing on May 17, 2017.

permanently moved to India, but at all times, retained his U.S. citizenship and passport.

On March 3, 2011, a grand jury returned an indictment charging defendant with twelve counts of wire fraud in violation of 18 U.S.C. § 1343. The indictment alleges that fraudulent inventory entries were made in the Alpha Omega computer system in order to expand the company's borrowing base, which allowed the company to receive additional financing from banks.

One month later, in April 2011, government agents tracked down defendant's daughter, Nidhi Handa, in Los Angeles, California, and "employed a ruse in an effort to learn of Handa's whereabouts." Docket # 38, at 4. She informed them that her father was spending his time between India and Europe, and to contact her father's attorney, Quinlan. The government conceded during the hearing that its agents never directly asked her how to specifically contact her father. The agents also never followed up with Quinlan to inquire further about the defendant's whereabouts or to inform Quinlan about the indictment against his client. Instead, the government sought the assistance of the International Criminal Police Organization ("INTERPOL") in locating and apprehending defendant. Specifically, in August 2011, it filed a Red Notice application, which allows INTERPOL to send an alert to its member countries that the United States has issued an arrest warrant for an individual. A Prosecutor's Agreement to Extradite was completed in June 2012 and a formal Red Notice for defendant was issued on November 26, 2012. The government provides no account for the period between November 2012 and March 2014. In March 2014, INTERPOL-Washington requested that INTERPOL-New Delhi check its databases to locate defendant. INTERPOL-New Delhi could not provide the requested information about defendant "without Handa's Indian address and passport number." Docket # 38, at

3

6.

Meanwhile, in 2012, defendant began collecting Social Security benefits while living in India. In 2014, he received a letter from the U.S. Department of Health that was mailed to his Indian address informing him that he was eligible for Medicare benefits, for which he applied, and which he began receiving effective June 1, 2014. He visited the U.S. embassy in India several times in 2015 and 2016 to renew his U.S. passport and to resolve payments of Social Security benefits.

Finally, on February 22, 2017, the government arrested defendant upon his arrival in Los Angeles, California. Defendant asserted his Sixth Amendment right to speedy trial during his arraignment on March 16, 2017. He now moves to dismiss the 2011 indictment, arguing that the government's near six-year delay to prosecute him violated his constitutional right. Docket # 22.

## II.     Analysis

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. Amend. VI. "This right attaches upon arrest or indictment, whichever occurs first." United States v. Santiago-Becerril, 130 F.3d 11, 21 (1st Cir. 1997) (citations omitted). If the accused is deprived of the Sixth Amendment right to a speedy trial, the "only possible remedy" is the dismissal of the indictment. Barker v. Wingo, 407 U.S. 514, 522 (1972). To determine whether post-indictment delay violates a defendant's Sixth Amendment right to a speedy trial, the court weighs the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4)

prejudice to the defendant.  Id. at 530.

    **A.**    **The Length of the Delay**

The first threshold factor is the length of the delay.  Generally, delays approaching one year are considered presumptively prejudicial.  See United States v. Carpenter, 781 F.3d 599, 610 (1st Cir. 2015).  There is no dispute that the delay here of nearly six years creates a presumption of prejudice and justifies further inquiry.[3]  The first factor therefore weighs strongly in favor of defendant.

    **B.**    **The Reasons for the Delay**

The second factor likewise supports finding a violation.  The government has offered no satisfactory reason for the lengthy delay in prosecuting the case.  Defendant contends that "the Government's delay to find, arrest, extradite, or contact Mr. Handa is likely attributed to negligence for which the Government should now shoulder the weight of blameworthiness."  Docket # 22, at 13.  The government argues that it was diligent and attempted to locate defendant through several means, including soliciting the help of INTERPOL and filing a Red Notice.  But even if the government can be credited with taking these actions, the fact still remains that it made no effort for two years after the Red Notice was filed in 2012 to pursue the case.  It also failed to take further steps after March 2014 to locate defendant's whereabouts in India and provide INTERPOL-New Delhi the additional

---

[3]     Although "[p]re-indictment delay does not implicate the Sixth Amendment's Speedy Trial provision," United States v. DeCologero, 530 F.3d 36, 78 (1st Cir. 2008) (citations omitted), defendant also urges the court to consider the "nearly 39-month delay that occurred between the date of the last alleged offense and the return of the Indictment," Docket # 22, at 1, in order to find that "the extraordinary length of the delay in this case is entitled to substantial weight in the Barker balancing analysis." Id.  There is no need to address defendant's argument about pre-indictment delay as the post-indictment delay to arrest is sufficiently lengthy to trigger the Barker analysis.

information it requested.  "[R]easonable diligence" demands "serious effort[s]."  Doggett v. United States, 505 U.S. 647, 652, 656 (1992).  Here, the government cannot be credited with undertaking any serious efforts to pursue the case.   Instead, it waited until defendant returned to this country—almost three years after its last attempt—to arrest him.  The record supports the conclusion that the near six-year delay here was due to the government's negligence.  See Barker, 407 U.S. at 531 ("[N]egligence . . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.").

        C.        **The Defendant's Assertion of His Speedy Trial Right**

Defendant invoked his right to a speedy trial at the earliest possible time after learning of the indictment.  A defendant cannot invoke his right to a speedy trial until he knows that criminal charges have been filed.  Here, the parties agree that the defendant did not know about the indictment against him until he was arrested in February 2017.  Consequently, his failure to assert his right to a speedy trial until March 2017 cannot weigh against him.

        D.        **The Prejudice to the Defendant Caused by the Delay**

Finally, the fourth factor requires the court to consider prejudice to defendant, specifically his interests in (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern on the part of the accused; and (3) limiting the possibility that the defense will be impaired.  See Barker, 407 U.S. at 532.  Prejudice is presumed when the length of the delay is excessive.  See Rashad v. Walsh, 300 F.3d 27, 34 (1st Cir. 2002) ("In

aggravated cases, involving grossly excessive delay, prejudice may be presumed despite the defendant's inability to identify particular testimony or evidence that has become unavailable due to the passage of time." (citing Doggett, 505 U.S. at 655–56)).

In this case, defendant was neither incarcerated nor aware of the fraud charges against him until his arrest in February 2017. Therefore, the first two factors are not relevant to this case. Defendant, thus, solely argues that the lengthy delay prejudices his ability to defend the case. In response, the government argues that the defendant has failed to allege any specific prejudice to his defense "beyond the general erosion of memory . . . ." Docket # 38, at 11. Specific prejudice, however, is required only if the government proceeded with "reasonable diligence," Doggett, 505 U.S. at 656, which it did not here.

Alternatively, the government contends that the presumption of prejudice can be rebutted because the prosecution of this case would not "depend[] heavily on eyewitness memory of events that occurred in 2007." Docket # 38, at 12. This argument does not rebut the Doggett presumption of prejudice. The indictment charges defendant with wire fraud. Even if the case does not depend "heavily" on eyewitness memory of events, it will doubtless depend on some witness testimony, and a nearly six-year post-indictment delay following nearly four years after the alleged criminal conduct, has surely contributed to fading memories. See Doggett, 505 U.S. at 655 ("[W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."). Accordingly, the government has failed to rebut the presumption of prejudice.

7

### III. Conclusion

Although "presumptive prejudice alone cannot carry a Sixth Amendment claim . . . it is part of the mix of relevant facts, and its importance increases with the length of the delay." Doggett, 505 U.S. at 656.  Here, in addition to the presumption of prejudice, the first three Barker factors fully support finding a violation.  See id. at 658 ("When the Government's negligence thus causes delay [nearly] six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." (internal citations omitted)).  Defendant's Motion to Dismiss the Indictment for Violation of the Defendant's Sixth Amendment Speedy Trial Right (Docket # 22) is ALLOWED.  Judgment may be entered for the defendant.

| July 19, 2017 | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |